**Sara D. FOSTER, Appellant,**

v.

**Jeffrey FOSTER, Appellee.**

**No. 1256.**

Court of Civil Appeals of Texas, Tyler.

May 31, 1979.

Rehearing Denied June 28, 1979.

Robert S. Morris, Kevin Thomas O'Hanlon, Austin, for appellant.

James E. Farris, Coffee, Goldstone & Bradshaw, Austin, for appellee.

MOORE, Justice.

Appellant, Sara D. Foster, brought this divorce action against appellee, Jeffrey Foster. After a trial before the court, a divorce was granted and Mrs. Foster was appointed managing conservator of the parties' three minor children. The judgment provided for a division of the community property, including assets and liabilities, and further awarded child support to Mrs. Foster in the amount of $250.00 per month, per child, until January 1982, and $350.00 per month per child thereafter until each child reached the age of eighteen. Mrs. Foster, not being satisfied with the division of the community property, perfected this appeal.

We affirm.

The record is before us only by way of a transcript and statement of facts. There are no findings of fact or conclusions of law.

The evidence shows that the parties were married on August 10, 1971, and continued to live together until August 14, 1977. Three children were born to or adopted by the parties whose ages ranged from three to six years of age at the time of the divorce. Dr. Foster was an endodontist and during the time of the marriage built up a dental practice with an adjusted gross income of approximately $78,000.00 per year. Mrs. Foster's education consisted of a bachelor's degree in education with sixty hours of graduate work in counseling and experimental psychology. In the early part of the marriage she taught school earning approximately $9,200.00 per year. At the time of the trial she testified that she had applied for a job paying $10,000.00 per year but had not yet been employed.

The evidence shows that at the time of the divorce, the community estate consisted of property of the value of $138,901.00, with community liabilities totaling $149,493.00, leaving the community estate with a negative net worth of $10,592.00. Neither party possessed separate property of any consequence.

The only community asset having any substantial equity value was the community homestead. According to the evidence the homestead had an estimated value of $120,000.00 to $145,000.00 which was burdened by a purchase-money lien in the amount of $84,602.00. In dividing the community estate, the trial court awarded the homestead to Dr. Foster as his separate property. The judgment recites that Dr. Foster was awarded:

"The residence at 7502 Valburn, Austin, Texas, subject to the orders hereinbelow for respondent to sell such residence and as specified herein to apply the proceeds to discharge those specific community debts which are in an amount found by the court to be approximately equal to the fair market value of the residence."

Under the terms of the judgment, Dr. Foster was ordered to sell the homestead and out of the net proceeds was ordered to discharge the purchase-money lien existing against it. He was also ordered to pay the following unsecured community debts out of the net proceeds of the sale: (1) the balance due City National Bank in the amount of $10,133.00; (2) the sum of $1,000.00 to attorneys representing each party; (3) the balance due and owing Louis Shanks for furniture in the amount of $5,450.00; (4) the balance due and owing the Dallas Teachers Credit Union in the amount of $10,746.00; and (5) the balance due and owing the Navy Credit Union in the amount of $5,500.00.

Under her first point of error, Mrs. Foster complains of that portion of the judgment ordering Dr. Foster to sell the homestead and to apply the proceeds to discharge the unsecured community debts. She contends that the order requiring the unsecured debts paid out of the proceeds from the homestead denied her right to the statutory protection afforded such proceeds from the claims of unsecured creditors as provided for in the Texas Constitution, art. 16, sec. 50.[1] Relying on the holding in *Delaney v. Delaney*,[2] she argues that the court should have awarded her one-half of the proceeds of the sale after the purchase money debt had been extinguished and that the order of the court ordering that the unsecured debts be paid out of the proceeds had the effect of denying her her right to her homestead exemption as mandated by the Texas Constitution, supra. For reasons to be explained later, we have concluded that any complaint she may have had in this regard has now become moot and for that reason a determination of this point is unnecessary.

---

1. "The homestead of the family . . . shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon . . . .."

2. 562 S.W.2d 494 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ dism'd).

The record reveals that after the appeal in this case had been perfected and was pending in this court, the parties caused to be filed an instrument styled "Supplemental Fact Statement." The instrument which was signed by the attorneys for both parties recites: (1) that appellant did not file a supersedeas bond to stay the sale of the homestead property; (2) that the husband sold the homestead for the sum of $112,000.00 and discharged the purchase money lien against same; (3) that appellant vacated the homestead; (4) that out of the net proceeds of the sale in the amount of $27,812.74 the husband paid the unsecured debts as ordered by the court.

■ In view of what has occurred since the entry of the judgment and the order appealed from, it is now impossible for this court to grant effective relief. The object of the order has been attained. The order has been executed and its force spent. There is no redress which this court can give appellant even if we concluded that the order requiring the payment of the unsecured debts out of the proceeds of the homestead deprived her of her statutory homestead exemption. The purchaser is in possession of the mortgaged premises and the proceeds have been disbursed in accordance with the order of the court. There is no way that either this court or the trial court could at this late date retrieve the proceeds from the sale of the homestead even if we concluded she was entitled to the same. She could have preserved the point by filing a supersedeas bond but she did not choose to do so. Consequently, under the facts before us, any question of whether the trial court erred in ordering the unsecured debts paid out of the proceeds of the homestead has now become moot. *Brown v. Fleming*, 212 S.W. 483, 484 (Tex.Com.App. 1919, judgment adopted); *Shaw v. Allied Finance Company*, 319 S.W.2d 820, 822 (Tex.Civ.App.—Fort Worth 1958, no writ history); 5 C.J.S. Appeal and Error § 1362, p. 447. The appellate court will not proceed to a determination when its judgment would be wholly ineffectual for want of a subject matter on which it could operate. *South Padre, Inc. v. Texas Commerce Bank National Assoc.*, 538 S.W.2d 475, 479 (Tex. Civ.App.—Corpus Christi 1976, no writ history).

■ Appellant contends by her second point of error that the division of the property made by the trial court constitutes an abuse of discretion, because in making the division the court failed to consider the disparity of earning capacity of the parties. In our view the contention is without merit and therefore the point is overruled.

The Texas Family Code Ann. sec. 3.63 (Vernon's 1975) requires the court to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party . . .." The statute does not require the division to be equal. Rather it suggests that the court should consider all of the circumstances of the parties. It has been held that the future needs of the wife and her lack of earning capacity are proper factors to be considered by the court in dividing the property. *Pickitt v. Pickitt*, 401 S.W.2d 846, 848 (Tex.Civ.App.—Tyler 1966, no writ history); *Roberson v. Roberson*, 420 S.W.2d 495, 503 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n. r. e.); *Goren v. Goren*, 531 S.W.2d 897, 899–900 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ dism'd). The cases which have applied the foregoing rule have usually been cases in which the parties have accumulated a community estate having a substantial net worth. In the instant case, the trial court was confronted with the task of attempting to divide a community estate with a negative net worth.

Since the record is before us without findings of fact or conclusions of law, we are required to sustain the judgment if it can be upheld on any legal theory finding support in the evidence. *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex.1968); *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex.1978).

The record shows that prior to trial Dr. Foster employed Allen Byrd, an accountant, for the purpose of making an inventory and appraisement of the community estate. The inventory and appraisement prepared

by him was offered in evidence. According to the inventory and appraisement, the community assets had a total value of $138,901.00 and the community liabilities amounted to $149,493.00, thus leaving the estate with a negative net worth of $10,592.00.

In dividing the community property, the trial court awarded Mrs. Foster the following items: (1) a 1976 Porsche automobile, having a value of approximately $10,000.00; (2) household furniture and appliances having a value of approximately $12,000.00; (3) personal effects having a value of approximately $6,000.00; (4) Teacher's Retirement Fund of the value of $640.00; and (5) a small checking account. Although the record shows that the Porsche automobile and the furniture were subject to an indebtedness totaling approximately $16,000.00, the husband was ordered to pay such indebtedness out of the proceeds from the sale of the homestead and was required to save her harmless from any of such debts. Thus, Mrs. Foster received community property having a net value of $28,640.00.

Dr. Foster was awarded the following community property: (1) the homestead which according to the evidence had a value of between $120,000.00 and $145,000.00, which the evidence shows was burdened with a purchase-money lien in the amount of $84,602.00; (2) all shares of stock in Austex, Inc., which the evidence shows had a negative net worth of $13,528.00; (3) all assets of his dental practice which the evidence shows had a negative net worth of $18,951.00; (4) a 1977 Good-Times Van which the evidence shows had a value of $10,000.00 which was burdened by a purchase-money lien of approximately its value; (5) a lake-shore lot which the evidence shows was subject to an undisclosed amount of mortgage indebtedness; (6) a coin collection of the value of $500.00; and (7) various items of personal property and clothing having a value of approximately $7,500.00. Under the terms of the judgment, Dr. Foster was required to assume the indebtedness on all property awarded him except the homestead which he was ordered to sell.

Appellant argues that the court abused its discretion in dividing the community property because the total amount of the community assets awarded to the husband greatly exceeded the amount awarded to her. While this may be true, the reason for the discrepancy lies in the fact that the court awarded the husband the community homestead. However, the homestead was of no value to the husband since the court ordered him to sell the same and apply the proceeds to the payment of the community debts. Consequently, the fact that he received the homestead should not be considered in determining whether the court's division was fair and equitable. Excluding the homestead, the share of the estate received by the husband had a negative net worth. For this reason, we cannot agree with appellant's contention that the court failed to consider her future needs and the disparity of earning capacities in dividing the property. While the earning capability of Dr. Foster greatly exceeded that of Mrs. Foster, the community assets available to the court to provide for her future need were extremely limited. Confronted with a difficult situation, it occurs to us that the trial court did all that it could to award her at least some property for her future needs which would be free from the claims of the creditors.

After a thorough review of the record, we are of the opinion that there is ample evidence to support the trial court's division of the community assets and liabilities and that no abuse of discretion was shown.

Accordingly, the judgment of the trial court is affirmed.