Lorenzo MOGFORD, Appellant,

v.

Dorothy MOGFORD, Appellee.

No. 16528.

Court of Civil Appeals of Texas, San Antonio.

Feb. 11, 1981.

Rehearing Denied March 18, 1981.

---

1. All references to the Code are to Article 5069 Tex.Rev.Civ.Stat.Ann. (Vernon's 1971).

Darrell G. Lochte, Kerrville, for appellant.

R. E. Lee, Mason, for appellee.

## OPINION

ESQUIVEL, Justice.

This is an appeal of a divorce case in which a cause of action for personal injuries was joined in the trial court. No appeal is taken from that part of the judgment granting the divorce. To our knowledge, it is a case of first impression in this state.

Appellee, Dorothy Mogford, the wife of appellant, Lorenzo Mogford, for thirty-one years, sued for divorce in the district court. At the time of the divorce there were no minor children of the marriage. By her Second Amended Original Petition, appellee joined a cause of action for personal injuries arising out of willful and intentional torts committed upon her person by appellant during the marriage. In her petition, appellee sought $100,000.00 actual damages and $100,000.00 in punitive damages. The trial of the cause was to a jury. The jury awarded appellee $20,000 in damages for injuries and mental anguish caused by appellant's abuse of her. No punitive damages were awarded. The decree of divorce entered by the trial court on August 31, 1979, stated the grounds for the divorce. In answers to special issues presented to the jury, it was found that appellant was guilty of cruel treatment of appellee; that during the marriage appellant had committed adultery; that appellant had willfully and intentionally struck and abused appellee during the marriage, and that appellee was injured as a result of the willful and intentional acts of appellant. The trial judge also made a division of the community property and entered a corrective judgment nunc pro tunc, so that temporary orders issued during the pendency of the divorce would continue in effect until the appeal was exhausted.

Appellant cites eight points of error on appeal. Because of the nature and importance of this case we will examine each point of error individually. This case delves into the unclear realm of interspousal tort immunity on which there is a dearth of cases that we can consider to guide us. As far as we have been able to determine there are no cases specifically on point with this particular case in this state.

Appellant's first point of error is as follows:

IT WAS FUNDAMENTAL ERROR FOR THE TRIAL COURT TO RENDER JUDGMENT AGAINST APPELLANT FOR CLAIMED INJURIES RESULTING FROM ALLEGED TORTIOUS CONDUCT OF APPELLANT DURING THEIR MARRIAGE AND BEFORE ANY SEPARATION. UNDER THE STATUTORY LAW OF 'INTERSPOUSAL IMMUNITY' APPELLEE NEITHER HAS NOR HAD ANY CAUSE OF ACTION FOR THE INJURY CLAIMED, IF ANY INJURIES THERE WERE.

This point of error is the one relied on and briefed most exhaustively by both

parties. Appellant's attorney argues forcefully that, "under the Constitution and laws of the State of Texas neither the wife nor the husband has *any* cause of action based upon the tortious conduct (willful or otherwise) of either against the other." Appellant's contention is that the common law doctrine of interspousal tort immunity is still applicable in Texas despite the recent erosion of this concept in the statutes, case law, and learned treatises. Appellant states that the common law was originally adopted by statute and that it remains in force today by statute. Appellant quotes from Vernon's Annotated Texas Statutes Article 1: "The common law of England so far as it is not inconsistent with the Constitution and the laws of this State, shall together with such Constitution and laws be the rule of decision and shall continue in force until altered or repealed by the Legislature."

Appellant urges that under this reasoning, the doctrine of interspousal tort immunity was transformed into statutory law because this common law concept of ancient England has been adopted by the Legislature of this State.

Appellant's argument fails in this case. The common law disability that prohibits one spouse from bringing a suit for grievances against the other has for some time been in retreat in this state. Equity, equality and justice have long cried out for a remedy to an aggrieved spouse for such heinous and despicable behavior inflicted by one spouse upon the other.

A passage in the landmark decision of *Bounds v. Caudle*, 560 S.W.2d 925, 926 (Tex. 1977), states quite succinctly the foundation on which the common law doctrine rested:

> The doctrine of interspousal tort immunity had its origin in the common law and is based on the legal fiction that the husband and wife became one person in law. Under this concept married women lost their capacity to sue or to be sued without the joinder of the husband. The wife's personal and property rights as well as her legal existence were considered suspended during the marriage. The husband acquired all of his wife's choses in action and could assert them in his own name and he became liable for the torts of his wife. This concept necessarily made it impossible for one spouse to maintain an action against the other.

It is quite evident that the concept of the unity of the husband and wife as one person has been abandoned so far as the laws of this state are concerned. A woman is no longer viewed as an appendage of her husband. She is an individual with rights and duties of her own and not merely a subservient chattel of the male.

The Texas Family Code now provides that a wife's recovery for personal injuries other than for loss of earning capacity is part of her separate estate. Tex.Fam.Code Ann. § 5.01(a)(3) (Vernon 1979). The Family Code permits a spouse to sue and be sued without the joinder of the other spouse. Tex.Fam.Code Ann. § 4.04 (Vernon 1979). Under section 5.21 of the Family Code, the wife has sole management, control and disposition of her separate estate. Tex.Fam. Code Ann. § 5.21 (Vernon 1979). It is not difficult to see that these statutory changes make the common law rationale for the doctrine obsolete under recent laws enacted by the Legislature. The fictional unity of the marriage relationship has also been dramatically altered by the emergence of women's rights over the past eighty years. The Supreme Court of Texas in *Bounds v. Caudle*, wisely ruled that there is no sound basis in barring a suit for an intentional tort, and accordingly abolished the rule of interspousal tort immunity to the extent that it served as a bar to all claims for willful and intentional torts arising out of a *wrongful death action*.

There is no doubt in our minds that the unity and harmony of the family is of paramount importance to our society, but so is the physical and mental well-being of the individuals that comprise the family. A family in which willful or intentional torts have caused injury and mental anguish to occur is not likely to be more disrupted by allowing a spouse to redress a grievance in the courts of equity. The usual occurrence is that when such physical attacks occur,

the marriage is already in deep trouble. It is most difficult to perceive how allowing a suit for injury could disrupt the marriage even more. As a matter of public policy, we feel that the disallowance of such actions could do more to destroy a family than to allow them. This is because the allowance of such suits provides a means to redress a wrong committed upon a family member who is otherwise virtually powerless to stop such abuses. Perhaps, it is not unlikely that the allowance of such actions would serve as a deterrent or restraint upon a violent family member who is disposed to batter his or her spouse and children. It is our opinion that the theoretical basis for the disallowance of such suits which is pinned upon public policy must give way to a more urgent policy need, that being the redress of a wrong committed upon the person of an individual. Indeed, several other states have gone so far as to allow suits between spouses to take place with regard to intentional torts, and in some cases even negligent torts. *Johnson v. Johnson,* 201 Ala. 41, 77 So. 335 (1917); *Cramer v. Cramer,* 379 P.2d 95 (Alaska 1963); *Leach v. Leach,* 227 Ark. 599, 300 S.W.2d 15 (1957); *Klein v. Klein,* 58 Cal.2d 692, 26 Cal.Rptr. 102, 376 P.2d 70 (1962); *Self v. Self,* 58 Cal.2d 683, 26 Cal.Rptr. 97, 376 P.2d 65 (1962); *Foster v. Foster,* 264 N.C. 694, 142 S.E.2d 638 (1965).

Justice Greenhill in the recent case of *Robertson et al. v. The Estate of Byron M. McKnight,* 609 S.W.2d 534 (Tex.1980), stated, "While Texas does not permit spouses to recover from each other for negligently inflicted injuries, a rule which does permit such a suit does not violate good morals or natural justice." Indeed, we believe that justice is served by stating what is already obvious; the legislature by its actions has mortally wounded the doctrine of interspousal tort immunity and we will not take heroic steps to insure its survival. We are not unheeding to policy arguments that would serve to controvert our position, but the dignity of the individual demands that at the same time we must heavily weigh many compelling factors in favor of allowing the trial court's judgment to stand. We have done this with great care and reflec-

tion. Accordingly, appellant's Point of Error No. 1 is overruled.

Appellant's Second Point of Error is as follows:

THE TRIAL COURT WAS GUILTY OF FUNDAMENTAL ERROR IN RENDERING JUDGMENT FOR THE APPELLEE'S CLAIMED PERSONAL INJURIES IN THIS CAUSE, BECAUSE THE INSTANT CAUSE IS ONE FOR DIVORCE AND THE DISTRICT COURT IS WITHOUT POWER, AUTHORITY OR JURISDICTION TO CONSIDER A TORT CLAIM IN A DIVORCE ACTION.

This case was initiated on August 3, 1977, with the filing of appellee's original petition. This petition requested that the court grant a divorce and divide the marital property, together with a prayer for the issuance of temporary orders. On October 30, 1978, following the Supreme Court's decision in *Bounds v. Caudle,* appellee filed her second amended original petition which in addition to matters previously pled, contained a claim for damages resulting from the willful and intentional torts of appellant.

The district court unquestionably had jurisdiction to consider the divorce case. The amount in controversy also gave the court jurisdiction to consider the personal injury case. Tex.Const. Art. V, § 8, Tex.Rev.Civ. Stat.Ann. art. 1906, §§ 2, 6 (Vernon 1964). A plaintiff in his or her petition may join as independent claims any or as many claims either legal or equitable or both as he may have against the opposing party. Tex.R. Civ.P. 51(a); 1 Tex.Jur.3d *Actions* § 52 (1979). Further, a party may state as many separate claims as he or she has regardless of consistency and whether they are based on legal or equitable grounds or both. Tex. R.Civ.P. 48; 1 Tex.Jur.3d *Actions* § 52, (1979). The courts favor the avoidance of a multiplicity of suits. The courts favor resolution in one suit of all matters existing between the parties and arising out of the same transaction. *Parkhill Produce Company v. Pecos Valley Southern Railway Company,* 348 S.W.2d 208 (Tex.Civ.App.—

San Antonio 1961, writ ref'd n.r.e.). Appellant's remedy if he did not want both causes of action to be considered at the same trial, was to file a motion for severance. Any claim against a party may be severed and proceeded with separately. Tex.R.Civ.P. 41; 1 Tex.Jur.3d *Actions* § 77 (1979). This refers to a claim that is a severable part of a controversy that involves more than one cause of action. *Rose v. Baker*, 143 Tex. 202, 183 S.W.2d 438 (1944). It is obvious from the record before us that the divorce action and the claim for personal injuries were set out in separate counts. Appellant's failure to request a severance of the two causes of action waived his right to have this matter reviewed on appeal. *Lewis v. Texas Employers' Insurance Association*, 151 Tex. 95, 246 S.W.2d 599 (1952). In light of this, appellant's point of error no. 2 is overruled.

Appellant's Third Point of Error.

THE TRIAL COURT ERRED IN RENDERING ITS ORDER FOR JUDGMENT NUNC PRO TUNC AND IN RENDERING THE CORRECTED DECREE OF DIVORCE BECAUSE THE SAME CHANGES THE SUBSTANCE OF THE ORIGINAL DECREE BY ADDING THERETO, THAT THE 'TEMPORARY ORDERS' IN THE INSTANT CASE WERE TO REMAIN IN FORCE AND EFFECT 'UNTIL THE JUDGMENT HEREIN SHALL BECOME FINAL.' AND THE TRIAL COURT ERRED FURTHER IN ITS NUNC PRO TUNC ORDER AND CORRECTED DECREE BECAUSE THE SAME WAS IN NO WISE SUPPORTED BY PLEADINGS OR EVIDENCE AND WAS MADE WITHOUT CONSIDERATION OF CHANGES IN THE CIRCUMSTANCES OF THE PARTIES AFTER THE DATE OF THE 'TEMPORARY ORDERS' AND OTHER CHANGES WHICH TRANSPIRED AFTER THE ENTRY OF THE ORIGINAL FINAL DECREE.

On August 10, 1977, the district court heard appellee's application for temporary orders. The court entered its temporary orders after considering the pleadings, evidence and arguments of counsel. The temporary orders, among other things, enjoined the appellant from molesting or harassing appellee; from disposing of or concealing assets of the marital estate; it awarded the exclusive use and possession of a 320–acre home place to appellee, and required appellant to pay appellee the sum of $50 per week as temporary alimony. Appellee's second amended original petition is the pleading on which this case went to trial. In paragraph seven of this pleading, appellee requested that "all temporary orders heretofore granted by the court remain in full force and effect during the pendency of this suit or until further orders of court." The prayer of the second amended original petition requested that "the court continue the injunctive relief in full that was granted upon prior hearings." Once all the evidence had been presented at the trial before the district court and the parties closed, appellant's counsel inquired about the status of the temporary orders and the trial judge stated, "I want the temporary orders kept in effect until a decision is rendered." On August 31, 1979, the district court entered its decree of divorce. No reference was made to temporary orders in the decree of divorce. Appellee filed a motion for correction of judgment nunc pro tunc on December 28, 1979, and in it she requested that the court amend the decree of divorce to add a provision that temporary orders previously entered would remain in full force and effect until a judgment was entered and became final. Appellant filed no responsive pleading. The district court on January 22, 1980, considered the motion for correction of judgment nun pro tunc. On March 11, 1980, the trial court entered an order for correction of judgment nunc pro tunc of the original decree of divorce. The court ordered that the temporary orders entered on August 10, 1977, ordering appellant to pay appellee temporary support of $50 per week and restraining appellant from certain actions as more fully set out in the temporary orders, be included into the decree of divorce until a judgment shall become final.

After the entry of the original decree of divorce, appellant perfected his appeal to this court. Appellee in order to clarify the

status of the temporary orders during the pendency of appeal, filed her motion for correction of judgment nunc pro tunc alleging the intention of the trial court to continue the temporary orders as announced from the bench at the close of trial had not been incorporated into the decree of divorce. No record has been brought forward on appeal of the hearing on the motion for correction of the judgment nunc pro tunc. However, the order for correction of judgment nunc pro tunc recites that, "according to the recollection" of the trial judge, it appeared to the trial court that the formal judgment signed and entered by the trial court omitted the provision pertaining to temporary orders as orally announced by the trial court and found such omission was the result of a clerical error.

Without a record before us, there is nothing to show why the provision concerning the temporary orders was not included in the original decree of divorce. Likewise, it is obvious that the trial judge was the only person with personal knowledge of the cause of the omission. The trial judge based his order for correction of judgment nunc pro tunc upon his recollection. Whether such errors in a prior judgment are judicial or clerical is a question of law. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402 (Tex.1971). To be clerical in nature it must be one which is not the result of judicial reasoning or determination. *Nolan v. Bettis*, 562 S.W.2d 520 (Tex. Civ.App.—Austin 1978, no writ). To be a valid judgment nunc pro tunc, the error must arise in the entry of judgment and not in its rendition. *Finlay v. Jones*, 435 S.W.2d 136 (Tex.1969). Such an entry is allowable at a subsequent term on the personal recollection of the trial judge and his recollection has the dignity and force of evidence. *Fort Worth and D.C. Railway Company v. Roberts*, 98 Tex. 42, 81 S.W. 25 (1904); *Shepherd v. City of Austin*, 467 S.W.2d 611 (Tex.Civ.App.—Austin 1971, writ ref'd n.r.e.); *Kluck v. Spitzer*, 54 S.W.2d 1063 (Tex.Civ.App.—Waco 1932, no writ); 33 Tex.Jur.2d *Judgments* § 31 (1969). In the absence of a conclusive record it is presumed that every fact necessary to support the findings and judgment within the scope of the pleadings was proved at the hearing and every presumption will be indulged in favor of the trial court's findings and judgment. *Guthrie v. National Homes Corporation*, 394 S.W.2d 494 (Tex.1965); *Howell v. First Federal Savings and Loan Association*, 383 S.W.2d 484 (Tex.Civ.App.— San Antonio 1964, writ ref'd n.r.e.). Accordingly, appellant's third point of error is overruled.

Appellant's Fourth Point of Error.

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S EXCEPTIONS AND OBJECTIONS TO THE CHARGE OF THE JURY RESPECTING SPECIAL ISSUE NUMBER THREE AND FOUR AND THE RESPECTING SPECIAL ISSUES NUMBERS ONE AND TWO.

Special issues number one, two, three and four were submitted to the jury as follows:

Special Issue Number One: Do you find from a preponderance of the evidence that respondent Lorenzo Mogford has been guilty of cruel treatment towards the petitioner Dorothy Mogford of a nature that renders further living together insupportable?

Special Issue Number Two: Do you find from a preponderance of the evidence that during the marriage of the parties the respondent, Lorenzo Mogford, has committed adultery?

Special Issue Number Three: Do your find from a preponderance of the evidence that Lorenzo Mogford willfully struck and abused Dorothy Mogford during the time since August 2, 1975, until the filing of this divorce suit?

Special Issue Number Four: Do you find from a preponderance of the evidence that during the marriage of the parties, Dorothy Mogford was injured as a result of willful and intentional acts of Lorenzo Mogford if any?

The jury's answer to all four special issues was "We do." It is presumed, if nothing to the contrary appears in the record, that the issues submitted found support in the pleadings and evidence. *Texas Employers' Insurance Association v. Patterson*, 144 Tex. 573, 192 S.W.2d 255 (1946); 4

Tex.Jur.2d Part Two *Appeal and Error— Civil Cases* § 726 (1969). It is our opinion from a careful review of the record that all four special issues submitted to the jury had substantial support in the pleadings and evidence. Indeed, there was overwhelming support in the evidence to warrant the submission of all four special issues to the jury. We find nothing in the evidence to sustain appellant's point of error number four and it is accordingly overruled.

■ Appellant's Fifth Point of Error. THE TRIAL COURT ERRED IN RENDERING JUDGMENT IN FAVOR OF APPELLEE AND AGAINST APPELLANT FOR PERSONAL INJURIES TO APPELLEE IN THE AMOUNT OF $20,000.00 BECAUSE THE JURY AWARD THEREOF WAS AGAINST THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE AND THE OBVIOUS RESULT OF PASSION AND PREJUDICE.

In special issue number five, the district court instructed the jury properly as to the elements of damage which could be considered. These elements included physical pain and mental anguish which might have been suffered since August 2, 1975, if any, and physical pain and mental anguish which in all reasonable probability would be suffered by appellee in the future. Such elements are proper in a suit for personal injuries. 17 Tex.Jur.2d *Damages* § 116 (1969). Whether or not a verdict is excessive is to be considered in the light most favorable to the award of the jury, or so excessive as to shock a sense of justice in the minds of the appellate court. *Green v. Hale*, 590 S.W.2d 231 (Tex.Civ.App.—Tyler 1979, no writ); *J. A. Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.); *Texas Consolidated Transportation Company v. Eubanks*, 340 S.W.2d 830 (Tex.Civ.App.—Waco 1960, writ ref'd n.r.e.); *Green v. Rudsenske*, 320 S.W.2d 228 (Tex.Civ.App.—San Antonio 1959, no writ). Evidence introduced at trial shows that appellee was struck in the ear so that it hurt for a month afterward. It also shows that she was threatened with being struck by a fence stay; that she was kicked on the ankles and legs on numerous occasions; that she was often pushed to the ground and against the house with great force. Appellee was verbally abused and threatened on many occasions. Testimony shows that she was whipped with a rope, bailing wire and other instruments, and that she feared for her safety. At times appellant threw rocks and sticks at appellee until she cried. Evidence concerning the conviction of appellant for the rape of his daughter along with evidence of time served in the penitentiary for this crime were properly not allowed into evidence.

In our opinion, the jury award was clearly not the result of passion or prejudice but rested squarely upon conscientious and sober deliberations of a duly impanelled jury. We find no merit to appellant's point of error number five, and it is accordingly overruled.

Appellant's Point of Error Number Six. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY MAKING AN UNJUST AND INEQUITABLE DIVISION OF THE COMMUNITY PROPERTY OF THE PARTIES.

Along with this point of error we will consider appellant's point of error number seven, which is closely related.

Appellant's Point of Error Number Seven.

THE TRIAL COURT ERRED FUNDAMENTALLY IN ORDERING THE SEPARATE REAL ESTATE TO BE SOLD BY A RECEIVER NOTWITHSTANDING THAT THE APPELLANT WOULD RECEIVE AT LEAST IN PART THE PROCEEDS OF SUCH SALE BECAUSE THE COURT IS NOT AUTHORIZED TO DIVEST THE TITLE OF SEPARATE REAL ESTATE AND BECAUSE OF APPELLANT'S HOMESTEAD INTEREST THEREIN.

The community estate according to the record in this case was approximately $141,000.00. This consisted mainly of an undivided one-half interest in 320 acres of land which was homestead, valued at $64,000.00. Other items in the marital estate included:

1. Livestock—estimated value $36,000.00

2. Certificates of Deposit—$34,600.00

3. Savings Account—$1,250.00
4. Mobile home—$5,177.00
5. 1972 Ford Pinto—$900.00
6. 14–foot aluminum boat and motor with trailer—$250.00
7. War surplus material—approximately $39,000.00

(However, there was controverting testimony that put little or not assignable value on this item of property).

The court awarded the certificates of deposit to appellee and awarded items numbered 4, 5 and 6 to appellant. The 320–acre tract of land was ordered sold. The proceeds of the sale were equally divided as to the community one-half interest. Appellant's separate undivided one-half interest in the property, given to him as a gift, was sold and the proceeds awarded to him. Due to the disparate earning capacities of appellant and appellee, the trial court ordered appellant to pay appellee the sum of $10,000.00 and awarded appellee's attorney's fees of $7,200.00.

The 320–acre tract of land was conveyed in 1949 shortly after the marriage of the parties. One-half was conveyed as a gift to appellant and the other half was purchased by the parties out of community funds. Both parties stipulated that an undivided one-half interest in the property belonged to the community estate and that an undivided one-half interest was a separate property of the appellant. The trial court found it impossible to make a just and right division in kind of the remaining real and personal property after it had first awarded several items of personal property to the parties. To remedy this, the trial court ordered such property sold by a receiver. Appellee had no special educational background, whereas, appellant was a graduate of Texas A & M University. It was stipulated by the parties that appellee's income from her separate property was approximately $1,120.40 per year. The evidence presented undisputably shows that the appellant would have considerably greater earning capacity than appellee. Disparity of earning capacity is a proper consideration in the division of the commu-

nity estate. *Bokhoven v. Bokhoven*, 559 S.W.2d 142 (Tex.Civ.App.—Tyler 1977, no writ). Appellee was a fifty-four-year-old woman at the time of the filing of the divorce. Age is a valid consideration of the courts in considering a proper division of community property. *Roberts v. Roberts*, 535 S.W.2d 373 (Tex.Civ.App.—Tyler 1976, no writ). In addition, the probable need for future support can also be considered in the division of property. *Foster v. Foster*, 583 S.W.2d 868 (Tex.Civ.App.—Tyler 1979, no writ). The division of community property by the trial court is not to be disturbed on appeal unless it appears from the record that such division was clearly the result of an abuse of discretion. *Smallwood v. Smallwood*, 548 S.W.2d 796 (Tex.Civ.App.—Waco 1977, no writ); *Marriage of Higley*, 575 S.W.2d 432 (Tex.Civ.App.—Amarillo 1978, no writ).

Finally, fault in breaking up the marriage is a proper consideration in divorce proceedings as it pertains to the division of community property. *Bell v. Bell*, 540 S.W.2d 432 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *Copeland v. Copeland*, 544 S.W.2d 183 (Tex.Civ.App.—Amarillo 1976, no writ). There was an overwhelming amount of evidence introduced at the trial to show that appellant was almost exclusively at fault in breaking up the marriage. Appellant admitted to adulterous behavior. Additionally, he was found to be guilty of cruel treatment toward appellee. In view of this the trial court's consideration of fault in breaking up the marriage was proper as it pertained to the division of community property.

A preponderance of the evidence in the record shows clearly there was no abuse of discretion by the trial court in dividing the community estate. Therefore, appellant's point of error number six is overruled.

As to point of error number seven, appellant contends that the result of the order of sale of the 320 acres of property was to wrongfully divest him of title to his separate real estate. Appellant cites *Eg-*

gemeyer v. Eggemeyer, 554 S.W.2d 137 (Tex.1977), and Article XVI §§ 15, 16, and Article I § 19 of the Texas Constitution, to support his position.

Section 3.63 of the Family Code allows a trial court to make a division of the estate of the parties that the court deems just and right with due regard for the rights of each party and any children of the marriage. In *Eggemeyer*, it was held that this division applies only to the community estate and not the separate real estate of the parties. *Eggemeyer v. Eggemeyer, supra*, at page 141.

The trial court does, however, have power to partition real estate either in kind or by sale. *Delaney v. Delaney*, 562 S.W.2d 494 (Tex.Civ.App.—Houston [14th Dist.] 1978, writ dism'd); *Alexander v. Alexander*, 373 S.W.2d 800 (Tex.Civ.App.—Corpus Christi 1963, no writ); *Reasonover v. Reasonover*, 59 S.W.2d 887 (Tex.Civ.App.—San Antonio 1933, no writ). The crux of the problem cited in this point of error devolves around the question of whether the order of sale of the property constituted a divestiture of title of appellant's separate property. We hold that it does not, and overrule appellant's point of error number seven.

In a number of cases it has been held that in partitioning the community estate either in kind, or by sale and partition of the proceeds, there is no divestive title to such real estate. *Hailey v. Hailey*, 160 Tex. 372, 331 S.W.2d 299 (1960); *Duncan v. Duncan*, 374 S.W.2d 800 (Tex.Civ.App.—Eastland 1964, no writ); *Puckett v. Puckett*, 205 S.W.2d 124 (Tex.Civ.App.—Texarkana 1947, no writ).

Here, the court's order did not divest appellant of title to his separate property. The court's action simply changed the form of his separate property from realty to personalty. We find no authority to hold that a partition of sale as ordered by the court is prohibited. Indeed, in *Eggemeyer*, the Supreme Court stated that the trial court could not, "extend to the taking of the fee to separate property of the one and its donation to the other." We find that the trial court did not abuse its discretion in ordering the sale and partition of the pro-

ceeds of the sale, nor do we find any constitutional prohibitions against such an action. Here, no separate realty of appellant was converted into the separate property of appellee upon divorce. Appellant kept his separate property as personalty instead of realty. Such a conclusion finds support in the case of *Buchan v. Buchan*, 592 S.W.2d 367 (Tex.Civ.App.—Tyler 1979, no writ), in which the court. held that the prohibition against *donating* the separate property of one spouse to another upon divorce announced in *Eggemeyer*, did not prohibit the trial court from having the authority under the laws of the state to fix a lien on separate estates for the discharge of payments to the former spouse by the owner of the property.

The fact that appellant's separate interest in the 320–acre tract was undivided and the trial court could find no equitable manner by which to partition the property in kind, and in view of the fact that appellant received all the proceeds from the sale of his separate property and the proceeds from the sale of one-half of the community's undivided interest leaves no question that the action of the trial court should be upheld.

Appellant's Point of Error Number Eight.

THE TRIAL COURT ERRED IN AWARDING THE APPELLEE'S ATTORNEY THE SUM OF $7,200.00 AS ATTORNEY'S FEES AND SUCH AWARD WAS AN ABUSE OF DISCRETION BECAUSE MUCH TIME AND PREPARATION WAS UNNECESSARY FOR THE LEGITIMATE ENDS OF THE DIVORCE SUIT.

We have examined this point of error thoroughly and find adequate evidence in the record to sustain the decision of the trial court as to the amount of attorney's fees. The rule is that such an award will only be disturbed on appeal where an abuse of discretion is shown. Evidence on the matter must be viewed in the light most favorable to the prevailing party. *Fortenberry v. Fortenberry*, 545 S.W.2d 40 (Tex.Civ.App.—Waco 1976, no writ). Accordingly, this point of error is overruled.

We find no reversible error in the decision of the trial court, and affirm its judgment.