COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-09-035-CV

 

 

ROBERT RICHARD TAYLOR, II                                               APPELLANT

 

                                                   V.

 

KATHY TAYLOR                                                                    APPELLEE

 

                                              ------------

 

           FROM
THE 360TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








Appellant
Robert Richard Taylor, II, an inmate proceeding pro se, appeals the trial court=s final
decree entered in his divorce case.  In
thirteen issues,[2]
he argues that the trial court erred by including certain provisions in the
final decree.  Because there is no relief
available to Robert, we will affirm.

II.  Procedural Background

Appellee
Kathy Lynn Taylor filed for divorce from Robert.  At the final trial, Robert represented
himself and appeared pro se via telephone from prison.  Robert did not object to any of Kathy=s
testimony, including her testimony that he had pleaded guilty to and had been
convicted of possessing child pornography. 

Robert
testified at the hearing as follows,

In one of my motions, I did make a counterclaim
against the petitioner for -- the reason for divorce was adultery, cruelty, and
abandonment.  And I did that according to
the relief that she was asking for.  I do
not feel that I was responsible for the loss of our home.  She did make enough at the time to make
payments on that.  And by her own
admission, she just let it go.  That=s a quote.  I should not be responsible for that.  And I certainly should not be responsible for
her attorney [fees]. 

I love my son. 
I love all three of them.  I love
[my minor son].  Even though there were
questions at the beginning whether he was legitimately mine, I have accepted
him as my son.  I also accepted Robert
James Taylor and Steven Lee Taylor as my sons. 
I love them very much.








I do not want to get into the reason why I pled
guilty to these charges after 18 months of saying I was not guilty.  I will not get into that with this
Court.  However, I do intend to do
everything I can to reverse that decision and to obtain my release from this
incarceration.

I do --
I am very apologetic that our marriage is ending this way.  I certainly did not expect it.  I wish Kathy all of the happiness she can
obtain.  But I would like to be able to
have the opportunity to see my son and to correspond with my son without interference.  That=s all
for the moment. 

On cross-examination, Robert
testified that he had been sentenced to fifteen years=
imprisonment; that he had a parole eligibility date of December 31, 2008; that
his minimum release date was March 9, 2014; and that his maximum release date
was April 6, 2022. 








After
hearing the evidence, the trial court orally granted the divorce, appointed
Kathy as the sole managing conservator, appointed Robert as the possessory
conservator, ordered Robert to pay child support in the amount of $250 per
month beginning sixty days after his release from prison,[3]
ordered that access to the child be supervised at all times by Kathy, awarded
each party the property in his or her possession, and made each party
responsible for his or her attorney=s
fees.  Approximately one month after the
final trial, the trial court signed the final decree of divorce.  The final decree, unlike the oral
pronouncement, orders Robert to pay child support of $250 per month with the
first payment being due on February 1, 2009; orders that any employer of Robert=s must
withhold from his earnings for child support; and orders Robert to pay fifty
percent of healthcare expenses that are incurred on behalf of the minor
child.  The final decree awards all
property to Kathy and requires Robert to pay all debts, charges, liabilities,
and obligations held solely in his name or held jointly in his and Kathy=s
name.  Robert did not file a motion for
new trial.

III.  Robert=s Issues and Requests for Relief








We
liberally construe Robert=s brief to encompass the
following arguments and requests for relief: 
(1) A request that the words Ainjury
or exploitation of children@ (as
used to describe his conviction) be removed from the final decree; (2) a
request that the word Afinally@ (as
used to describe his conviction) be removed from the final decree; (3) a
request that the final decree be changed to reflect the actual ruling of the
court regarding child support and a request that a detailed account balance be
provided to him; (4) a request that all deductibles and co-pays be forgiven
until his child support obligation is to begin and that the final decree be
corrected to reflect these changes; (5) a statement that he was entitled to the
appointment of an attorney ad litem because his parental rights were modified;
(6) a request to reserve the right to paternity testing; (7) a request that the
final record reflect the circumstances of his conviction; (8) a request that
this court remind Kathy of her duties to keep Robert apprised of the health and
welfare of the minor child; (9) a request that any and all health care costs
not begin until sixty days after his release; (10) an objection to the warning
on page eighteen of the final decree, which deals with paying for health
insurance, and a request that it not apply to him until sixty days after his
release; (11) a request that all debts that were accepted jointly by the
parties be the sole responsibility of Kathy; (12) a statement that he has not
been requested to sign the final decree and that he does not intend to sign it
in its current form; and (13) a request for this court to consider a more equitable
division of property as outlined in his addendum. 

IV.  Not Entitled to Appointment of Attorney








We will
begin with Robert=s fifth issue in which he argues
that he was entitled to the appointment of an attorney.  We review a trial court=s
failure to appoint trial counsel in a civil case for an abuse of
discretion.  See Tex. Gov=t Code
Ann. ' 24.016
(Vernon 2004); Gibson v. Tolbert, 102 S.W.3d 710, 712B13 (Tex.
2003).  A civil litigant has no general
constitutional right to appointed counsel.[4]  See Sandoval v. Rattikin, 395 S.W.2d
889, 893B94 (Tex.
Civ. App.CCorpus Christi 1965, writ ref=d
n.r.e.), cert. denied, 385 U.S. 901 (1966).  A[I]n
some exceptional cases, the public and private interests at stake are such that
the administration of justice may best be served by appointing a lawyer to
represent an indigent civil litigant.@  Travelers Indem. Co. of Conn. v. Mayfield,
923 S.W.2d 590, 594 (Tex. 1996).  Whether
exceptional circumstances warranting the appointment of counsel exist is
determined on a case-by-case basis.  Gibson,
102 S.W.3d at 713.

We
cannot conclude that this divorce case presents exceptional circumstances that
require the appointment of counsel.  See
In re Marriage of Martinez, No. 07-99-00056-CV, 1999 WL 994389, at *2 (Tex.
App.CAmarillo
Nov. 2, 1999, no pet.) (not designated for publication) (holding that because
no evidence was presented supporting a finding that his case represented an
exception entitling him to appointed counsel and because appellant was not in
danger of deprivation of liberty resulting from his divorce proceeding,
appellant was not entitled to appointed counsel).  Thus, we hold that the trial court did not
abuse its discretion by failing to make such an appointment.  We overrule Robert=s fifth
issue.

V.  Requests to Change the Final Decree Were Not
Preserved








Robert=s first
through fourth, seventh, ninth, and tenth issues deal with requests to change
the final decree other than his request that the property division in the
decree be changed.  Importantly, Robert
does not challenge any portion of the trial court=s
written decree as legally flawed, nor does he cite to any case law for such a
proposition; rather, he asserts that the final decree should be modified
because it varied from the trial court=s oral
ruling.

For
thirty days after the trial court signed the final decree, it had plenary power
to modify its written judgment.  See Tex.
R. Civ. P.329b(d).  Robert did not file
any type of post judgment motion requesting that the trial court  modify, correct, or reform the judgment in
the various ways he seeks to have us do in his first through fourth, seventh,
ninth, and tenth issues.  See Tex.
R. Civ. P. 316, 329b(g).  Robert thus
waived any error by not presenting these issues to the trial court.  See Tex. R. App. P. 33.1(a); Stallworth
v. Stallworth, 201 S.W.3d 338, 349 (Tex. App.CDallas
2006, no pet.) (holding that because wife did not file a post-judgment motion
for new trial arguing that the final decree did not match the oral
pronouncement, she waived any error).  We
overrule Robert=s first through fourth, seventh,
ninth, and tenth issues.

VI.  Equitable Division of Marital Estate

In his
eleventh and thirteenth issues, Robert argues that all debts, which were
entered into jointly by the parties, should be the sole responsibility of Kathy
and that this court should consider a more equitable division of the
property.  








The
trial court has wide discretion in dividing the parties=
community estate.  Murff v. Murff,
615 S.W.2d 696, 698 (Tex. 1981); see generally Tex. Fam. Code Ann. ' 7.001
(Vernon 2008).  The trial court may
consider such factors as the spouses=
capacities and abilities; benefits which the party not at fault would have derived
from continuation of the marriage; business opportunities, education, and
relative physical conditions; relative financial condition and obligations;
disparity of ages; size of separate estates; the nature of the property; and a
disparity in earning capacities or of incomes. 
Murff, 615 S.W.2d at 699. 
The party attacking the property division bears the heavy burden of
showing that the trial court=s
property division was not just and right. 
Goetz v. Goetz, 567 S.W.2d 892, 896 (Tex. Civ. App.CDallas
1978, no writ).  We must indulge every
reasonable presumption in favor of the trial court=s proper
exercise of its discretion.  Vannerson
v. Vannerson, 857 S.W.2d 659, 669 (Tex. App.CHouston
[1st Dist.] 1993, writ denied).








One who
complains of the trial court=s
division of property must be able to demonstrate from evidence in the record
that the division was so unjust and unfair as to constitute an abuse of
discretion.  Finch v. Finch, 825
S.W.2d 218, 221 (Tex. App.CHouston
[1st Dist.] 1992, no writ).  A trial
court=s
division will not be disturbed on appeal unless it appears from the record that
the division was clearly the result of an abuse of discretion.  Mogford v. Mogford, 616 S.W.2d 936,
944 (Tex. Civ. App.CSan Antonio 1981, writ ref=d
n.r.e.).  The test for whether the trial
court abused its discretion is whether the court acted arbitrarily or
unreasonably.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241B43 (Tex.
1985), cert. denied, 476 U.S. 1159 (1986); see also Wilson v. Wilson,
44 S.W.3d 597, 600 (Tex. App.CFort
Worth 2001, pet. denied).  And where the
record does not contain findings of fact and conclusions of law, it is implied
that the trial court made all necessary findings to support its judgment.  Holt Atherton Indus., Inc. v. Heine,
835 S.W.2d 80, 83 (Tex. 1992).








Here,
Robert=s
arguments center on whether the division of the debts and community property
was properly deemed just and right by the trial court.[5]  The final decree awards all property to Kathy
and requires Robert to pay all debts, charges, liabilities, and obligations
held solely in his name or held jointly in his and Kathy=s
name.  Evidence that would support an
unequal distribution of property include the facts that Robert was in prison
for possession of child pornography and that Kathy was left to provide for the
minor child.  The record before us,
moreover, does not detail the types of debt or the items that made up the
community property, nor does the record contain values of the debts or the
community property.  As stated by the
Corpus Christi Court of Appeals in Choate v. Choate,

It is virtually impossible, without inventories admitted into evidence
and findings by the court, for us to ascertain the propriety of appellant=s claims.  [Citation omitted.] The responsibility, after
all, for the initial factual determinations, the determination of the
credibility of the witnesses, and for weighing the evidence, falls on the
shoulders of the able trial judge, not the appellate court.  Thus, we believe appellant does not, and
probably cannot, bear his burden of demonstrating an abuse of discretion.

 

No. 13-01-00575-CV, 2002 WL
34230965, at *2 (Tex. App.CCorpus
Christi Aug. 8, 2002, no pet.) (not designated for publication).  We hold that the trial court did not abuse
its discretion in dividing the parties=
community estate.  We therefore overrule
Robert=s
eleventh and thirteenth issues.

VII.  No Relief Available








In his
sixth, eighth, and twelfth issues, Robert reserves the right to paternity
testing, requests this court to remind Kathy of her duties under the decree,
and states that he did not sign the decree and will not sign it in the current
form.  None of these requests were
presented to the trial court, nor can we discern any relief concerning these
issues that is available to Robert from this court.[6]  We therefore overrule Robert=s sixth,
eighth, and twelfth issues.  See
Tex. R. App. P. 33.1(a); see also Tex. R. Evid. 103(a)(1).

VIII.  Conclusion

Having
overruled all thirteen of Robert=s issues
and having held that there is no relief available from this court, we affirm
the trial court=s judgment.

 

PER CURIAM

 

PANEL: WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.

 

DELIVERED:  December 17, 2009











[1]See Tex. R. App. P. 47.4.





[2]We note that on the page
labeled AIssues To Be Presented,@ Robert sets forth eight Aissues.@  The Aissues@ listed there, however, are not legal issues that
can be resolved and include things like A7. 
Possession Order@ and A8.  Appellant=s desire to bring forth oral arguments personally
in front of the Court.@  In the interest of justice, we have done our
best to broadly construe the arguments raised throughout Robert=s brief and do not limit
our consideration to the Aissues@ set forth on the AIssues To Be Presented@ page.  See Tex. R. App. P. 38.9.





[3]After ordering Robert to
pay child support, the trial court stated on the record, AHowever, let me comment
that it sounds like your first possible release date may be after the child
attains the age of 18 and graduates from high school.  So it may be that those child-related issues
will be moot.@





[4]Cases involving juvenile
delinquency, termination of parental rights, and court-ordered mental health
services are exceptions to this general rule. 
See Tex. Fam. Code Ann. '' 51.10, 107.013 (Vernon Supp. 2009); Tex. Health
& Safety Code Ann. ' 574.003 (Vernon
2003).  None of the exceptions apply
here.





[5]To the extent that Robert=s eleventh and thirteenth
issues might also encompass an argument that the division in the final decree
does not match the division announced in court, our analysis above in section V
disposes of that argument.





[6]The same is true for the
portion of Robert=s third issue that
requests a detailed child support account balance.  This is not something that our court can
provide to him.