**Michael David FARLEY, Appellant,**

v.

**Cynthia Kaye FARLEY, Appellee.**

No. 11–95–379–CV.

Court of Appeals of Texas,
Eastland.

Aug. 22, 1996.

Dick R. Crownover, Crownover & Newman, Katrina W. English, Crownover Law Firm, Abilene, for appellant.

Cynthia Kaye Farley, Linda Purcell, Law Offices of Linda Purcell, Abilene, for appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

## OPINION

WRIGHT, Justice.

This is a divorce action. Michael David Farley challenges on appeal that portion of the divorce decree in which the trial court divided the community property estate and awarded attorney's fees and expert witness fees to Cynthia Kaye Farley. We affirm in part and reverse and remand in part.

Michael David Farley and Cynthia Kaye Farley were married on August 22, 1975. Three children were born during the marriage.[1] The Farleys separated on October 5, 1994. The trial court conducted a final divorce hearing on May 3, 1995, and entered a decree of divorce on September 22, 1995. In the final divorce decree, each party was awarded his or her personal property, and the parties' home was ordered sold. Mrs. Farley was to receive two-thirds of the net proceeds from the sale, and Mr. Farley was to receive one-third of the net proceeds. Also, Mr. Farley was awarded any and all interest in a lease purchase agreement connected with a business known as "National Wrecker Service" and was to pay all debts owed by "National Wrecker Service." The trial court further ordered:

> For the purpose of equalizing the division of the community property estate and to compensate [Cynthia Farley] for attorney's fees and expert's fees, IT IS FURTHER ORDERED AND DECREED that [Cyn-

thia Farley] recover of and from [Michael Farley] judgment for $102,022.00.

In 16 points of error, Mr. Farley challenges the award of the business interest to him and the award of the money judgment to Mrs. Farley. In Points of Error Nos. 1 through 8, Mr. Farley basically maintains that, for various reasons, the parties had no interest in National Wrecker Service for the court to divide. In Points of Error Nos. 9 through 16, Mr. Farley challenges the legal and factual sufficiency of the evidence to support the award of attorney's fees and expert witness fees.

### Relevant Facts

In September 1985, Mr. Farley entered into a lease purchase agreement with Tommie Stevens whereby Mr. Farley, as lessee, would lease "all of the assets used to operate the business known as National Wrecker Service." The agreement further provided that Mr. Farley was entitled to use, operate, possess, and control the leased vehicles and equipment during the lease term in return for monthly payments. On August 26, 1991, both Mr. and Mrs. Farley entered into a new lease purchase agreement because the 1985 agreement became unworkable. The 1991 agreement contained essentially the same provisions as the 1985 agreement except the new agreement provided that, in return for the use of the vehicles and equipment, the Farleys would pay Stevens the sum of $409,050.00 payable in monthly installments in the amount of $2,525.00. The 1991 agreement also provided that the Farleys would acquire complete ownership of and title to the "merchandise" when the Farleys made a total of 162 payments ($409,050.00) to Stevens.

Prior to the date of the first agreement, the Farleys were both employed by Stevens at National Wrecker. Mr. Farley drove a wrecker; Mrs. Farley performed bookkeeping duties and answered the phones. After entering the agreement, Mrs. Farley continued to work for National Wrecker as a bookkeeper until November 1994. Shortly after the Farleys separated in October 1994, Mrs.

---

1. At trial, conservatorship and child support were not contested issues. The Farleys agreed that Mrs. Farley be appointed managing conservator of their children and that child support be set at $600.00 per month.

Farley was prohibited from working at National Wrecker. Mrs. Farley had a ninth-grade education and, at the time of trial, was employed as a waitress. Her pay was $2.13 per hour plus tips. Mrs. Farley's weekly income was approximately $160.00 to $165.00. That income was supplemented by child support payments made by Mr. Farley. Mr. Farley continued to manage and operate National Wrecker.

After the final hearing, the trial court entered the following findings of fact in relevant part:

4. [Michael and Cynthia] accumulated real property, personal property and contract rights consisting of ... [among other things, a] lease purchase agreement for a business known as National Wrecker Service which consists of office equipment and furnishings, communication equipment, shop equipment, wrecker equipment, towing equipment, building and land with a total asset value of $300,000.00 and which produces gross income monthly between $25,000.00 and $40,000.00.

5. During the marriage, the community paid $102,000.00 on the lease purchase agreement ... [and] the parties incurred debts including ... [among other things] accounts payable of National Wrecker Service including,

    i. monthly lease payment of $2,525.00 per month against a balance of $198,-000.00,

    ii. vendor accounts which vary from month to month,

    iii. real property lease payments of $400.00 per month.

### Contract Rights in National Wrecker Service

Mr. Farley's first eight points of error concern rights which were awarded to him in connection with National Wrecker. We believe a fair summary of those points to be that the trial court abused its discretion in that (1) there was no ownership interest to divide; (2) and (3) the parties were in default under the agreement and, therefore, the trial court had nothing to divide under the agreement other than a debt; (4) Stevens was not a party to the divorce, and the trial court could not enter an order which would affect him. Further, the business was akin to a partnership and, therefore, could not be awarded to either party. Mr. Farley also contends that (5) there is no evidence showing the value of any contract rights under the agreement; (6) there is insufficient evidence showing the value of any contract rights under the agreement; and (7) and (8) the payments under the agreement did not create an equitable interest for the community estate.

■ In a decree of divorce, the trial court shall order a division of the community estate in a manner which the court deems just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. § 3.63(a) (Vernon 1993). A trial court has broad discretion in making the division. *McKnight v. McKnight,* 543 S.W.2d 863, 866 (Tex.1976). A division of the community estate need not be equal, and the trial court may weigh many factors in reaching that decision. *Murff v. Murff,* 615 S.W.2d 696, 699 (Tex.1981). In exercising its discretion, the trial court may consider the spouses' capacities and abilities, the benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial conditions and obligations, disparity in ages, the size of separate estates, and the nature of the property. *Murff v. Murff, supra* at 698–699; see also *Massey v. Massey,* 807 S.W.2d 391 (Tex. App.—Houston [1st Dist.] 1991), *writ den'd,* 867 S.W.2d 766 (Tex.1993). It is Mr. Farley's burden to establish that the trial court abused its discretion. *Murff v. Murff, supra; Scott v. Scott,* 805 S.W.2d 835, 841 (Tex. App.—Waco 1991, writ den'd). A court is held to have abused its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–242 (Tex. 1985), *cert. den'd,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). As an appellate court, we will indulge every reasonable presumption in favor of the proper exercise of discretion by the trial court. *Murff v. Murff, supra.*

■ The agreement gave the Farleys the right to use, operate, possess, and control the vehicles and equipment necessary to operate National Wrecker and, at the point of full payment, the right to acquire title to the property. The rights under the agreement provided an income for the Farleys. The trial court heard testimony that the gross income of the business was between $25,-000.00 to $40,000.00 per month. The parties had added to the furnishings, equipment, and supplies of the business and had reduced the balance due on the contract to $198,832.00. The final decree awarded the community interest "in the business," rather than specific assets, to Mr. Farley. Mr. Farley's first point of error is overruled.

In his second point of error, Mr. Farley argues that the trial court abused its discretion in finding the parties had a contract right in National Wrecker Service because the parties were in default at the time of trial. In his third point, Mr. Farley further argues that, because the parties were in default, the trial court abused its discretion in awarding the business interest to him because all that existed was a debt, not a property interest.

■ The agreement required that the Farleys maintain the vehicles and equipment in good mechanical condition and running order, provide insurance, and obey all governmental regulations. The trial court heard testimony that the Farleys had not totally met these requirements. Article IX of the Agreement provides that the lessor, at its option:

> [M]ay by written notice to the Lessee, declare the Lessee in default on the failure of the Lessee to make timely rental payments or perform any other of its obligations as set forth in this lease.

There was no evidence that Stevens, at the time of the final hearing, had given written notice to the Farleys declaring the agreement in default. The Farleys continued to enjoy their rights under the agreement at the time of the division. Mr. Farley has not shown that the trial court abused its discretion. The second and third points of error are overruled.

■ In his fourth point of error, Mr. Farley argues that, even if the parties had an "ownership interest" in National Wrecker, the court abused its discretion in finding that the parties had a contract right in the business because the court cannot "affect the lease-purchase agreement of the parties while the court additionally awards [Mrs. Farley] $102,022.00." Mr. Farley cites *McKnight v. McKnight*, 535 S.W.2d 658 (Tex. Civ.App.—El Paso), *rev'd*, 543 S.W.2d 863 (Tex.1976), and the Texas Uniform Partnership Act, TEX.REV.CIV.STAT.ANN. art. 6132b, § 28–A (Vernon 1970), as support for his contention.

Neither the Uniform Partnership Act nor *McKnight* control more than the proposition that the rights of a divorcing spouse can attach only to the partner's interest in the partnership and not specific partnership property. Even if we assume that Mr. Farley's position characterizing this relationship as a partnership is correct, the decree clearly awards him the community interest "in the business," not in specific assets. Moreover, the decree specifically divests Mrs. Farley of any interest in the business. Also, whether a partnership exists is a question of fact. *Baxter v. Williams*, 544 S.W.2d 192 (Tex.Civ. App.—Waco 1976, writ ref'd n.r.e.). In this case, the trial court did not find that such a partnership existed between the Farleys to operate National Wrecker. Point of Error No. 4 is overruled.

Mr. Farley contends in his fifth and sixth points that the trial court abused its discretion in awarding an equalizing judgment to Mrs. Farley because there is no evidence and because there is insufficient evidence to show the value of the "contract right."

■ In reviewing a no evidence point, we must consider only the evidence and inferences that tend to support the court's finding and disregard all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). In reviewing a factual insufficiency point, we must consider and weigh all of the evidence, set aside the judgment, and remand the cause for a new trial if we conclude that the finding is so against the great weight and preponder-

ance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Company,* 715 S.W.2d 629 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The record reflects that National Wrecker produced a gross monthly income between $25,000.00 and $40,000.00. The income statement for National Wrecker for the period ending December 31, 1993, showed a total income of $310,729.19. The income summary for 1994 showed a total of $275,688.60 in cash and charge sales.

The Farleys made monthly lease payments to Stevens in the amount of $2,525.00. They had reduced the amount due on the agreement to $198,832.00. There was evidence that the parties owed over $35,000.00 in federal income and payroll taxes. Mr. Farley testified that, since October of 1994, after the parties separated, National Wrecker lost contracts with the city amounting to over $64,-000.00. There was evidence that, at the time the Farleys entered the first agreement in 1985, National Wrecker had a fair market value of $300,000.00. The Farleys later purchased additional equipment and an additional wrecker. Mr. Farley testified that there are four wreckers which were being operated in the business. Mr. Farley further testified that, if he sold the wreckers, they would be worth over $44,000.00. The record reflects that the Farleys expended a substantial portion of monies from the business for personal use and took cash from the business both before and after it had been processed through the regular bookkeeping process. The trial court also heard testimony that the Farleys used the funds to live above and beyond their means and that such a lifestyle affected the financial status of the business.

■ Considering only the evidence and inferences that tend to support the findings of the trial court and disregarding all evidence and inferences to the contrary, we hold that the evidence was legally sufficient to support the value of the "contract right." *Stafford v. Stafford, supra; Garza v. Alviar, supra.* Further, considering all of the evidence, we conclude that the findings of the trial court regarding the value of the "contract rights" are not so against the great weight and preponderance of the evidence as

to be manifestly unjust. *Pool v. Ford Motor Company, supra; In re King's Estate, supra.* Mr. Farley's fifth and sixth points of error are overruled.

Points of Error Nos. 7 and 8 fail to comply with TEX.R.APP.P. 74(f) and are overruled. *Clone Component Distributors of America, Inc. v. State,* 819 S.W.2d 593, 597 (Tex. App.—Dallas 1991, no writ); *Texaco, Inc. v. Pennzoil, Co.,* 729 S.W.2d 768, 810 (Tex. App.—Houston [1st Dist] 1987, writ ref'd n.r.e.), *cert. dism'd,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

*Attorney's and Expert's Fees*

In Points of Error Nos. 9 through 12, Mr. Farley argues that the trial court erred in awarding attorney's fees to Mrs. Farley because there was insufficient evidence and because there was no evidence to show that the attorney's fees were reasonable and necessary and that the charges were the same or similar for such fees in the Taylor County area. In Points of Error Nos. 13 through 16, Mr. Farley argues that the trial court erred in awarding expert witness fees in favor of Mrs. Farley because there was no evidence and because there was insufficient evidence to show that the expert witness fees were charges that were the same or similar for such fees in the Taylor County area and that the charges were reasonable and necessary. The trial court found that Mrs. Farley incurred attorney's and expert's fees in excess of $1,200.00 in preparation for trial. The court awarded Mrs. Farley a money judgment of $102,022.00 for the purpose of equalizing the division of the community property estate and compensating Mrs. Farley for her attorney's and expert's fees.

■ In a suit for divorce, the court may award costs to any party as it deems reasonable. TEX. FAM. CODE ANN. § 3.65 (Vernon 1993). The award of costs in a suit for divorce is a matter within the discretion of the trial court. *Mann v. Mann,* 607 S.W.2d 243, 245 (Tex.1980).

■ Mrs. Farley testified that she retained a certified public accountant to evaluate the wrecker business. Mrs. Farley stated that the accountant's fees at the time of

the hearing were $1,200.00. Mrs. Farley also testified that she had retained an attorney to represent her in the divorce. Mrs. Farley stated that she had a contract with her attorney which provided for an hourly rate of $125.00 and an hourly rate of $150.00 "while ... in Court." Mrs. Farley also stated that she had paid her attorney $2,500.00. There was no other evidence concerning the attorney's fees. There was also no other evidence concerning the charges by the expert witness. While Mrs. Farley's testimony is some evidence that fees were paid to the expert witness and to her attorney, we hold that the evidence is insufficient to show the reasonableness of those fees. It is within the trial court's discretion to award such fees; but, when awarded, the evidence must be factually sufficient to support a finding that the fees are reasonable. Contrary to Mrs. Farley's position, such information cannot be supplied by resort to TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 et seq. (Vernon 1986) because actions for divorce are not one of the enumerated actions covered by Chapter 38. Points of Error Nos. 10 and 14 are overruled. Points of Error Nos. 9 and 13 are sustained. In view of our disposition of these points, we do not address Points of Error Nos. 11, 12, 15, or 16. TEX.R.APP.P. 90(a).

The trial court did not abuse its discretion in deciding to award attorney's fees and expert witness fees. However, we reverse and remand that portion of the judgment pertaining to the amount of those fees so that the trial court might determine and set apart the amount of such fees. TEX.R.APP.P. 81(b)(1). In all other respects, the judgment of the trial court is affirmed.