In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00329-CV**
_____

**LING HUANG, Appellant**

**V.**

**JOHN HACKBARTH, Appellee**

**On Appeal from the 60th District Court**
**Jefferson County, Texas**
**Trial Cause No. 23DCCV0497**

## MEMORANDUM OPINION

Appellant Ling Huang ("Appellant" or "Huang") and Appellee John Hackbarth ("Appellee" or "Hackbarth") married in 2013, Hackbarth filed for divorce in 2017, the couple entered into a Mediated Settlement Agreement ("MSA") in April of 2022, and the couple's divorce was final in March of 2023. In June of 2023, Huang filed a petition (and later amended petitions) against Hackbarth stating claims for sexual assault, intentional infliction of emotional distress, and intrusion of privacy. Hackbarth filed a motion for summary judgment, and the trial court granted

summary judgment for Hackbarth and dismissed all of Huang's claims with prejudice. On appeal, Huang challenges the summary judgment in three issues. As explained below, we affirm.

## Procedural Background

<u>Huang's Original Petition</u>

Huang filed her Original Petition in this matter on June 2, 2023, about two months after her divorce from Hackbarth was final. In her Petition she alleged claims against Hackbarth for assault or offensive physical contact and intentional infliction of emotional distress. Huang filed Amended Petitions in June, July and September of 2023. Huang's Third Amended Petition filed in September of 2023 was the live pleading when the trial court granted the summary judgment. The Third Amended Petition stated claims against Hackbarth for "assault/offensive physical contact[,]" intentional infliction of emotional distress, and intrusion of privacy, and Huang sought more than $1 million in damages. Huang alleged that Hackbarth sexually assaulted her multiple times in April, May, and June of 2021 while they were still married. As to the claim for intrusion of privacy, the Petition alleged that Hackbarth "intrud[ed] upon her solitude by taking pictures of [Huang] without her consent and knowledge when she was not properly clothed[]" and Huang alleged that she had "only recently discovered such pictures and intrusions."

2

In her Third Amended Petition, Huang also included an allegation that the discovery rule and equitable tolling applied to her claims, arguing that she could not have discovered the objectionable photos until she filed this lawsuit, even by exercising reasonable diligence, and she argued any limitations periods were tolled under the discovery rule and equitable tolling.

Hackbarth's Answer and Counterclaim

Hackbarth filed an answer to Huang's petition asserting a general denial, and he asserted affirmative defenses of waiver, estoppel, claim preclusion, and res judicata. Hackbarth asserted counterclaims for breach of contract and declaratory judgment, which he later nonsuited.

Hackbarth's Motion for Summary Judgment

After engaging in discovery, Hackbarth filed a traditional motion for summary judgment ("MSJ") on all of Huang's claims. Hackbarth argued that res judicata bars all of Huang's claims because they were litigated or should have been litigated as part of the divorce proceeding. Hackbarth also argued that the parties' MSA settled all of the alleged claims, and that the MSA specifically states that "the parties generally release each other from any claims that either may hold against the other, except as established or expressly reserved herein[,]" and Huang did not expressly reserve any claims against Hackbarth. We summarize Hackbarth's summary judgment evidence below.

3

*a. Huang's Counterpetition in the Divorce Proceeding*

As part of the MSJ, Hackbarth attached copies of Counterpetitions that were filed by Huang in the divorce proceeding, in which she alleged that Hackbarth had "committed acts of cruelty[]" and wherein she argued that she should be awarded a disproportionate share of the community estate due to "[c]ruel treatment" by Hackbarth. The Counterpetitions also alleged that Hackbarth had "intentionally or recklessly engaged in a pattern of extreme and outrageous conduct that caused [her] to suffer severe emotional distress."

*b. Mediated Settlement Agreement ("MSA")*

Hackbarth also attached a copy of the Mediated Settlement Agreement ("MSA") executed by the parties in April of 2020. The MSA states, in relevant part, "[t]he parties generally release each other from any claims that either may hold against the other, except as established or expressly reserved herein[,]" and the MSA does not contain any language reflecting that either party reserved any claims. According to the terms of the parties' divorce decree, the decree incorporates the terms of the MSA.

*c. Huang's Letter in the Divorce Proceeding*

Another exhibit attached to the MSJ is a copy of a letter Huang wrote to the mediator in the divorce proceeding. Therein, she stated that in April of 2022, she was experiencing severe anxiety, stress, and at least one panic attack. She alleged

4

that Hackbarth had threatened her and her dog if she did not agree to his offer and that she has been unable to function at work.

*d. Huang's Initial Disclosures*

Hackbarth attached Plaintiff's Initial Disclosures that Huang made in the current lawsuit. Therein, Huang stated that Hackbarth sexually assaulted her on June 8th and 9th of 2021 and that she "did not consent to the sexual activity but [Hackbarth] engaged in sexual activity with [Huang] anyway[]."

*e. Huang's December 2023 Deposition*

Hackbarth also attached as an exhibit selected pages from the transcript of Huang's deposition, taken in December of 2023. In the deposition, Huang agreed that the instances of sexual assault on which Huang based her claims occurred while the parties were still married and when the divorce was still pending. Huang also testified in her deposition that she "ran across" some "indecent pictures" of herself in July of 2023 when she was going through backups of the parties' phones and tablets. According to Huang, during the marriage, she backed up content—including photos—from the couple's devices to the "cloud" and whatever was stored on one device would be available on all their devices. Huang agreed that all their devices were connected, and they shared content throughout the marriage. Huang also agreed that, during the divorce proceeding, she saw some "inappropriate videos" that Hackbarth made that she had not previously known about. Huang also testified that

5

Hackbarth's daughter ("Daughter") saw inappropriate pictures of Huang when she used Hackbarth's cell phone in the summer of 2021:

Q. . . . So tell me about your conversation with [Daughter].
. . .
About the pictures in the summer of 2021.

A. She mentioned the pictures, and she wanted to show me. I said, "I don't want to see it."

Q. So she - -

A. She got really upset.

Q. So she mentioned to you that she saw inappropriate pictures on her dad's phone?

A. Yes.

Q. Yes? And she wanted - - she asked you if you wanted to see them?

A. Yes.

Q. Okay. And you told her you didn't want to see them?

A. I said, "No."

*f. Hackbarth's Daughter's Deposition*

Hackbarth also attached some portions of testimony from the Daughter's deposition, in which the Daughter agreed that Huang had told her that Hackbarth had sexually assaulted Huang before the divorce was final.

*g. Huang's October 2021 Deposition*

Hackbarth attached selected pages from a transcript of Huang's deposition that was taken during the divorce proceeding in October of 2021. The transcript reflects that Huang testified that Hackbarth intentionally inflicted emotional distress upon her when they were married by telling her she was stupid and "worth[] nothing."

*h. Huang's October 2023 Answers to Hackbarth's Interrogatories*

Also attached to the MSJ is a copy of Huang's answers to Hackbarth's interrogatories in this lawsuit, wherein Huang listed the names of mental health providers from whom she had received counseling in 2021, 2022, and 2023. Huang stated in her answers that she had reported the sexual assaults to the police in November and December of 2022 and in June of 2023. When asked how Huang became aware of pictures and alleged privacy intrusions by Hackbarth, Huang stated as follows:

> [Huang] came across some indecent pictures in or around July 2023 through an online backup. Further, in or around February 2022, [Huang] saw some inappropriate videos that [Hackbarth] took. Additionally, [Daughter] mentioned to [Huang] that [Daughter] saw an inappropriate picture or pictures while [Daughter] used [Hackbarth's] cell phone in or around summer 2021.

Huang reported that she had lost time from work as a result of Hackbarth's conduct from June 21, 2021, to June 19, 2022, and she claimed she had lost about $122,663 in income.

7

Huang's Response to the MSJ

In her Response to the MSJ, Huang argued that her allegations of sexual assault and the privacy claims regarding the "illicit" photos of her were not presented in the divorce case. She argued that Hackbarth "fraudulently concealed the existence of nude or semi-nude photographs of Huang" during the divorce proceeding and she claimed she only discovered the photos in July of 2023, therefore she contends her claim based on the photos is not barred by limitations. In addition, Huang argued that the subject matter of the MSA was limited to the division of the parties' property, and it did not specifically release any intentional torts between them. Huang argued that the division of property in the divorce was not uneven and did not include any remuneration for intentional torts allegedly committed by Hackbarth. Huang argued that the MSA did not release intentional tort claims because it did not mention any such claims and "there was no meeting of the minds on that issue[.]"

The Response recounted incidents of alleged sexual assault of Huang by Hackbarth on May 11, 2021; May 15, 2021; May 16, 2021; May 28, 2021; June 8, 2021; and June 9, 2021. The Response alleged that Hackbarth told Huang that their marriage license "gave him lifetime access to her sexually."

According to the Response, Huang performed data backups from Hackbarth's iPad or computer during the marriage, transferring data onto external drives or

8

thumb drives. Huang alleged she did not review the data when she was backing up the devices, and she only discovered in July of 2023 that Hackbarth had taken photos of her partially clothed. The Response stated that due to the alleged conduct by Hackbarth, Huang was depressed, suicidal, anxious, and had lost weight.

Huang attached several exhibits to her Response, which we summarize below.

*a. Hackbarth December 2023 Deposition*

Hackbarth agreed in his deposition in this lawsuit that, when the MSA was executed in the divorce proceeding, he did not contemplate he was settling any claims for an alleged sexual assault because at that time none were being made. He also testified that Huang's moods were unpredictable during the marriage.

*b. Huang Declaration*

Huang attached her own Declaration dated April 23, 2024. Therein, Huang averred that Hackbarth sexually assaulted her in April, May, and June of 2021, forcing her to have sex with him over her objections. She also alleged that, during the same months, Hackbarth would watch TV programs about spousal murder cases, and he told her he was "taking notes." According to the Declaration, Hackbarth told Huang that her days were numbered, and Huang regarded this as a threat to her life. Huang stated that the property division in the divorce was not an uneven distribution, and she was not awarded any "money paid separately to [her] for any cause of action."

9

Huang stated that, during the marriage, Huang performed backups of Hackbarth's devices onto external hard drives or thumb drives, but she stated that she did not review the documents while doing the backups. According to Huang, during the divorce Hackbarth denied possessing "illicit or otherwise inappropriate photographs" of her, and it was only in July of 2023 that she saw what she described as "inappropriate photographs that Hackbarth had taken[]" of her.

*c. Huang Diary Entries*

Huang attached copies of her personal diary from May and June of 2021. Therein, Huang noted that she did not want to have sex with Hackbarth, that she told him to have sex with his paramour, and that she "begged him to leave [her] alone." One diary entry stated that Hackbarth "almost choked [her] by putting his whole bodyweight on [her] face" until she could not breathe. A diary entry dated June 9, 2021, reads "JGH taped me a lot."

*d. Text Screenshot*

Attached to Huang's Declaration is an undated photo of a text message purportedly from Hackbarth that includes a photo of the parties' marriage license and a text message that reads, "This is my ticket. So don't ask again if I bought [a] ticket. I have lifetime pass!"

10

*e. Huang December 2023 Deposition*

Huang also attached excerpts from a transcript of her deposition in this case. The deposition includes the following exchange:

Q. . . . We asked you to describe how plaintiff became aware of the pictures and intrusions allegedly taken by defendant and the date plaintiff first became aware. . . .
. . .
    Would you explain how you came across the pictures in July of 2023?

A. So throughout the marriage, we have [] the iPads, the phones or whatever. I do, how do you call it, backup of those pictures. Like we go visit places and whatever, I back up into my computer.
    And in July 2023, I went through some of the backup, those things that [are] backed up a long time ago, and I ran across those pictures.
. . .
    It's [] the family devices I backed up throughout the different time. So it could be found, his iPhone. It could be found, the iPad. It could be found on my iPad through the whatever, upload, I get the natural thing, you get the one picture, and then [all] devices all have it.

*f. Hackbarth's Responses to Request for Production – Divorce Proceeding*

Huang attached Hackbarth's response to her fourth request for production in the divorce proceeding, wherein Huang requested nude or semi-nude photos of her in Hackbarth's possession, including in digital format. Hackbarth responded, "No photos of Respondent nude or semi-nude. Momentary glance of Respondent nude during one of her rages in one of the videos previously provided."

11

<u>Hackbarth's Reply in Further Support of His MSJ</u>

In his Reply, Hackbarth argued that res judicata precludes Huang's claims because "the causes of action in this case all relate to the same emotional distress and cruel treatment and the subsequent physical, mental and emotional injuries which allegedly occurred during the marriage and which she raised as an issue in the divorce proceeding." Hackbarth further argued that the injuries Huang claimed in this lawsuit "are the exact same injuries she claimed in the divorce proceeding when requesting a disproportionate share of the community property." As to Huang's claim for intrusion of privacy, Hackbarth argued that his Daughter told Huang about "inappropriate pictures" in the summer of 2021 when Huang had access to all of the photographs from the family's iCloud account, and Huang "only had to exercise reasonable diligence" to discover the photos and she could have asserted her claim for intrusion of privacy in the divorce proceeding, yet she failed to do so.

Attached to the Reply was a copy of a transcript of Huang's October of 2021 deposition. Therein, Huang testified that she had requested a disproportionate share of the community property because of health problems and the "cruel[] treatment" she experienced during the marriage. Hackbarth also attached a copy of a transcript of Huang's December of 2023 deposition, in which she testified that she and Hackbarth stopped living together in June of 2021.

12

Huang's Initial Disclosures

Huang filed Plaintiff's Initial Disclosures in this case before the trial court ruled on Hackbarth's MSJ. Therein, Huang stated the legal theories and factual bases for her claims as follows:

- In June 2021, Defendant sexually assaulted Ling Huang at their then-family home.
- The two June Assaults occurred on June 8 and June 9, 2021.
- Plaintiff did not consent to the sexual activity but Defendant engaged in sexual activity with Plaintiff anyways.
- Plaintiff has been damaged both physically and emotionally and psychologically.

The Trial Court's Ruling

After a hearing on Hackbarth's MSJ, the trial court signed an Order granting the summary judgment for Hackbarth and dismissing all of Huang's causes of action against Hackbarth with prejudice. After entry of a Final Judgment, Huang filed a Notice of Appeal.

Issues

On appeal, Appellant states three issues, which we quote below:

1. Hackbarth did not meet his burden to prove he is entitled to summary judgment on Ms. Huang's claims under the doctrine of res judicata.

2. Hackbarth did not meet his burden to prove he is entitled to summary judgment on the ground that Ms. Huang's claims were released under the parties' mediated settlement agreement resolving their divorce.

13

3. Hackbarth did not meet his burden to prove he is entitled to summary judgment on Ms. Huang's claim for intrusion of privacy based on his affirmative defense of limitations.

According to Appellant, spousal torts are not compulsory but only permissive in divorce actions, and res judicata does not bar Appellant's claims against Appellee because those claims were not part of the divorce proceeding, as she "was not in a position" to try those claims due to severe anxiety and panic attacks at the time. Appellant argues that a fact issue exists about whether she was able to participate in asserting claims for sexual assault and intrusion of privacy at the time of the divorce. She also argues that the MSA did not release her tort claims against her ex-husband because they were not part of the divorce proceeding. Appellant further argues that fact issues exist on whether the discovery rule or equitable tolling apply to her claim for intrusion of privacy. Appellant also argues that Appellee's MSJ did not establish when her claim accrued, when limitations ran, or that she filed her claim outside the limitations period.

## Standard of Review

We review grants of summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). The movant for a traditional motion for summary judgment has the burden to establish that no genuine issues of material fact exist, and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). If

14

the moving party produces evidence entitling the movant to a summary judgment, the burden shifts to the nonmovant to present evidence that raises a material fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 548-49. Every reasonable inference must be indulged in favor of the nonmovant, and any doubts must be resolved in the nonmovant's favor. *Id.* at 549. An issue is conclusively established "if reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017) (quoting *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998)). When the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court are meritorious. *Provident Life and Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

Analysis

The doctrine of res judicata bars a second action by the parties on matters that were "actually litigated in a previous suit, as well as claims 'which, through the exercise of diligence, could have been litigated in a prior suit.'" *Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 58 (Tex. 2006) (quoting *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex. 1992)); *see also Barr v. Resol. Tr. Corp.*, 837

15

S.W.2d 627, 631 (Tex. 1992) ("A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been litigated in a prior suit."). The doctrine promotes the finality of judgments, prevents needless and repetitive litigation, and requires that "claims arising out of the same subject matter [] be litigated in a single lawsuit." *Hallco Tex., Inc.*, 221 S.W.3d at 58 (citations omitted). Res judicata requires proof of three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) identity of parties (or those in privity with them), and (3) the second action is based on the same claims that were raised or could have been raised in the first lawsuit. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). "The party asserting the defense of res judicata has the burden of proving each element of the defense." *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 706 (Tex. 2021) (citations omitted). Where the material facts are not disputed, whether res judicata applies is a question of law that we review under a de novo standard of review. *Roberts v. Roberts*, 646 S.W.3d 56, 59 (Tex. App.—San Antonio 2022, pet. denied); *Eagle Oil & Gas Co. v. Shale Expl., LLC*, 549 S.W.3d 256, 267 (Tex. App.— Houston [1st Dist.] 2018, pet. dism'd); *Kinney v. BCG Atty. Search, Inc.*, No. 03-12- 00579-CV, 2014 Tex. App. LEXIS 3998, at *27 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.).

16

The Texas Supreme Court examined whether a claim for intentional infliction of emotional distress can be brought in a divorce proceeding in *Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993). The Court explained that "joinder of tort claims [between spouses] with the divorce, when feasible, is encouraged [and] [r]esolving both the tort and divorce actions in the same proceeding avoids two trials based at least in part on the same facts[] and settles in one suit 'all matters existing between the parties.'" *Id.* at 625 (quoting *Mogford v. Mogford*, 616 S.W.2d 936, 940 (Tex. App.—San Antonio 1981, writ ref'd n.r.e.)). When a tort action is tried with the divorce, the trial court may take fault into account (when pleaded) in dividing the marital estate, but a spouse may not recover both tort damages and a disproportionate share of the marital estate based on the same tortious conduct. *Id.*

Although our Court has not directly discussed the application of *Twyman* in the context of a post-divorce tort case between spouses, the San Antonio Court of Appeals applied *Twyman* in *Brinkman v. Brinkman*, 966 S.W.2d 780 (Tex. App.— San Antonio 1998, pet. denied). After the Brinkmans married, Mr. Brinkman physically assaulted Ms. Brinkman, which resulted in permanent damage to two discs in her neck. *Id.* at 780. The following year, Mr. Brinkman sued for divorce, and Ms. Brinkman countersued, requesting a disproportionate share of the marital estate and asserting various tort claims: cruel treatment, fraud, breach of fiduciary duty, and constructive trust. *Id.* at 780-83. Mr. Brinkman moved to sever the divorce

17

action from the tort claims, which the trial court granted, and the trial court entered judgment on the divorce, basing the division of property on the couple's prenuptial agreement. *Id.* at 781. A few months later, the Brinkmans filed a joint Motion to Set Aside the Order of Severance and Decree of Divorce, which the trial court granted, and the divorce action was joined with Ms. Brinkman's tort claims. *Id.* The parties then entered into an Agreed Amended Decree of Divorce wherein they stated they resolved all issues in controversy. *Id.*

Ms. Brinkman then filed a lawsuit against Mr. Brinkman for damages and injuries relating to the assault. *Id.* The trial court granted summary judgment in favor of Mr. Brinkman, finding that Ms. Brinkman's claims were barred by res judicata.[1] *Id.* The San Antonio Court affirmed the trial court ruling, and, applying *Twyman*, explained that in this case the facts supporting the tort claims were not different from those alleged in the divorce. *Id.* at 783. In this case, "[i]f Ms. Brinkman's personal injury claim was not fully litigated in the divorce action, it certainly *could* have been with the use of diligence, as is required by the principles of res judicata." *Id.* (citing *Barr*, 837 S.W.2d at 631). "Because Ms. Brinkman knew about her personal injury

---

[1] The San Antonio Court explained that Ms. Brinkman had also alleged a claim against Mr. Brinkman's employer based on a theory of respondeat superior. In affirming the trial court, the San Antonio Court referred to both defendants collectively and did not distinguish between Mr. Brinkman and his employer in its analysis. *See generally Brinkman v. Brinkman*, 966 S.W.2d 780 (Tex. App.—San Antonio 1998, pet. denied).

claim against Mr. Brinkman and used it to her advantage in the divorce proceeding, the claim should have been joined with the divorce action." *Id.*

The Dallas Court of Appeals also discussed the issue in *McNair v. McNair*, No. 05-21-01064-CV, 2023 Tex. App. LEXIS 4295 (Tex. App.—Dallas June 20, 2023, no pet.) (mem. op.). When Ms. McNair filed for divorce, she alleged that Mr. McNair had committed family violence against her, and she asked for a disproportionate share of the marital estate on that basis. *Id.* at *1. The parties reached an MSA, but before the divorce was final, another incident occurred wherein Mr. McNair allegedly "forcefully threw [Ms. McNair] to the ground and kicked her in the head." *Id.* at *2. The trial court subsequently signed an agreed final decree of divorce that contained terms that were more favorable to Ms. McNair than she would have received in the MSA. *Id.* About two years later, Ms. McNair filed a lawsuit against Mr. McNair asserting claims for assault and intentional infliction of emotional distress based on the alleged incident when Mr. McNair threw Ms. McNair to the ground and kicked her—which occurred before the divorce was final. *Id.* Mr. McNair pleaded the affirmative defense of res judicata and moved for summary judgment on that basis. *Id.* at *3. The trial court granted summary judgment in favor of Mr. McNair. *Id.*

In affirming the trial court, the Dallas Court explained, "[i]f [Ms. McNair]'s claims were not fully litigated in the divorce action, they certainly could have been

19

with the use of diligence." *Id.* at **7-8. Applying *Brinkman*, the Dallas Court explained that Ms. McNair put Mr. McNair's tortious conduct at issue in her petition for divorce, and "this is the type of case in which interspousal tort claims should be joined with the divorce." *Id.* at *8. "When [Ms. McNair] chose to allege family violence to receive a disproportionate share of community property, she was bound to assert all of her claims for family violence arising out of the marriage." *Id.* (citing *Brinkman*, 966 S.W.2d at 783). Therefore, the Dallas Court concluded that Ms. McNair's claims in the post-divorce lawsuit were barred by res judicata. *Id*. at 9.

In this case, the parties do not dispute the first two elements of res judicata—the existence of a prior final judgment and identity of parties. *See Martin*, 645 S.W.3d at 225. The only element of res judicata at issue is whether the second action is based on the claims that were raised or could have been raised in the first lawsuit with the exercise of due diligence. *See id.* The record reflects that Huang's claims against Hackbarth for assault and intentional infliction of emotional distress in this lawsuit are based on conduct that allegedly occurred during the marriage and relate to claims that Huang raised in the divorce proceeding. Huang's Original Counterpetition and First Amended Counterpetition in the divorce action requested a disproportionate share of the marital estate based in part on the allegations of "fault in the breakup of the marriage[.]" Huang's Second and Third Amended Counterpetitions for Divorce specifically added an allegation that Hackbarth had

20

"committed acts of cruelty[]" and again sought a disproportionate share of the marital estate based on "[c]ruel treatment[.]" In her divorce, she also asserted a claim for intentional infliction of emotional distress. In her letter to the trial court in the divorce proceeding, Huang alleged that Hackbarth had threatened her and her dog, and that she was experiencing severe anxiety and stress. Huang's Original Petition in this lawsuit alleged that Hackbarth sexually assaulted her multiple times in April, May, and June of 2021. Selections from her personal diary include entries alleging that Hackbarth was pressuring her to have sex with him even though she "begged him to leave [her] alone[]" and that on one occasion, he "almost choked" her. Selections from Huang's October of 2021 deposition reflect that she testified that Hackbarth intentionally inflicted emotional distress upon her by telling her she was stupid and worthless. In her Declaration, filed along with her Response to Hackbarth's MSJ, she alleged that Hackbarth sexually assaulted her in April, May, and June of 2021, while they were married, forcing her to have sex with him over her objections. In her initial disclosures in this lawsuit, Huang stated that the factual basis for her claims was nonconsensual sex with Hackbarth and sexual assaults by Hackbarth in June of 2021.

Much like the facts in *Brinkman* and *McNair*, Huang put Hackbarth's tortious conduct at issue in her petitions for divorce, and "this is the type of case in which interspousal tort claims should [have been] joined with the divorce." *See McNair*,

21

2023 Tex. App. LEXIS 4295, at *8. When Huang chose to allege cruelty and family violence in her divorce proceeding, as well as allegations of intentional infliction of emotional distress, and she sought a disproportionate share of community property, she was bound to assert all of her claims for family violence arising out of the marriage. *See id.* (citing *Brinkman*, 966 S.W.2d at 783). Consistent with the Supreme Court's admonition to join tort claims between spouses with the divorce when feasible, we conclude that Huang's claims for assault and intentional infliction of emotional distress in this lawsuit are based on the same claims that were raised or could have been raised in the first lawsuit with the exercise of due diligence and are barred by res judicata. *See Twyman*, 855 S.W.2d at 625; *McNair*, 2023 Tex. App. LEXIS 4295, at **7-9 ("The doctrine of res judicata applies not only to claims that were actually litigated, but also to claims that *could* have been litigated with the use of diligence.") (citing *Brinkman*, 966 S.W.2d at 783).

As to Huang's claim for intrusion of privacy, which relates to the photographs, we conclude that this claim also could have been asserted in the divorce proceeding through the exercise of diligence. *See Barr*, 837 S.W.2d at 631; *Hallco Tex., Inc.*, 221 S.W.3d at 58. In her deposition in this lawsuit, Huang testified that she and Hackbarth stopped living together in June of 2021. Huang testified that Hackbarth's Daughter told her in the summer of 2021 that Hackbarth had inappropriate photos of Huang on his phone, but that Huang did not want to look at them. Huang also

22

testified that, during the marriage, she routinely backed up the content of their phones and tablets to the "cloud," and that she had access to the content, although she states she only "ran across" some "indecent pictures" of her in July of 2023 when she was going through backups of their devices. In her response to interrogatories in this lawsuit, Huang attested that in or around February of 2022, she saw some "inappropriate videos" that Hackbarth took. In her deposition in this lawsuit, Huang agreed that, during the divorce proceeding, she saw some "inappropriate videos" that Hackbarth took of her.

The photos and videos at issue are not in our record. Assuming without deciding that the photos and videos Hackbarth allegedly took intruded upon Huang's privacy rights, we conclude that, even if her claim for intrusion of privacy was not litigated in the divorce action, it *could* have been filed in the divorce with the use of due diligence because Huang had knowledge of the allegedly inappropriate photos (Hackbarth's Daughter notified her of the photos in 2021, and Huang refused to look at the photos) and Huang had access to and common possession of the objectionable items during the marriage. *See McNair*, 2023 Tex. App. LEXIS 4295, at **7-8. Therefore, this claim is also barred by res judicata. *See id.* at *7 (res judicata applies not only to claims actually litigated in a prior lawsuit but also claims that "*could* have been litigated with the use of diligence[]"); *Brinkman*, 966 S.W.2d at 783 (citing *Barr*, 837 S.W.2d at 631). The discovery rule would not help Huang on these

facts because the rule only tolls limitations for an injury that is inherently undiscoverable or that cannot be discovered with the use of reasonable diligence. *See BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65-66 (Tex. 2011).

We conclude that Appellant's claims are barred by res judicata, and we overrule her first issue. In light of our disposition on Appellant's first issue, we need not address Appellant's second issue relating to the settlement agreement or the scope of the claims that were released under the MSA or her third issue on limitations. *See* Tex. R. App. P. 47.1.

Having overruled all of Appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on May 19, 2025
Opinion Delivered August 21, 2025

Before Golemon, C.J., Johnson and Chambers, JJ.

24